"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JULIE M. LEEF, ) | Case No. EDCV 05-539-MLG |
| Plaintiff, ) | MEMORANDUM OPINION AND ORDER |
| v. ) | |
| JO ANNE B. BARNHART, ) | |
| Defendant. ) | |

**I.   Factual and Procedural Background**

Plaintiff Julie M. Leef ("Plaintiff") filed applications for Social Security Disability benefits and Supplemental Security Income benefits on October 28, 1998, alleging that she was disabled and unable to work due to atypical connective tissue disorder, fibromyalgia, polyarthragias, Raynaud's phenomenon, and neurological abnormalities. (AR 139). The Social Security Administration denied benefits initially and on reconsideration. (AR 116-17). *De novo* hearings were held on February 15, 1999 and on April 6, 2000 before an administrative law judge ("ALJ"). (AR at 46-92, 93-115). Plaintiff was represented by counsel and testified in her own behalf

at both hearings.

Plaintiff was 46 years old at the time of the first series of hearings. (AR at 21). She has a high school education and a semi-skilled work background. (AR at 21). Plaintiff worked at Macy's Department Store for seven years as a cosmetics counter manager. (AR at 66). She left her job in 1994 because she could no longer do the "stocking," "pulling and the pushing," or the shelving display work required for the job and was starting to experience significant fatigue. (AR at 66-67). In 1995, she worked for two weeks, on a temporary full-time basis, at Harris's Department Store, where she sold perfume. (AR at 65-66). She testified that she left that job because she could not keep up the pace, she was tiring very easily, and the job was too strenuous for her. (AR at 66).

Medical Expert Dr. Samuel Landau and Vocational Expert Allen Ey testified at the February 15, 1999 hearing. Plaintiff, Dr. Joseph Malancharuvil, and Vocational Expert Corrine Porter testified at the April 6, 2000 hearing. On April 12, 2000, the ALJ issued a decision denying Plaintiff's applications for benefits. (AR 15-22). The Appeals Council denied review, whereupon the ALJ's decision became the final decision of the Commissioner.

On March 15, 2002, Plaintiff commenced a civil action for judicial review in this court. (Case No. EDCV 02-00215-MLG). On December 27, 2002, this court issued an Order and Judgment remanding this matter for further proceedings. (AR at 421-29). Pursuant to this court's order, the Appeals Council issued an Order of Remand on March 10, 2003. (AR at 430-31).

On September 4, 2003, a supplemental hearing was held before a different ALJ, John W. Belcher. (AR at 303-44). At that hearing,

Plaintiff again testified that she suffers from pain, insomnia, headaches and cold intolerance. (AR 311). She stated that she takes Vicodin and Oxycontin, that she obtains in Mexico, for pain. (AR 315). Since divorcing her husband in 2001, she lives with her adult children. (AR 323). She had not received medical treatment since 2000. (AR 325).

Dr. Nafoosi, the medical expert at the 2003 hearing, characterized Plaintiff's symptoms as vague. (AR 330). He testified that while at one time silicone breast implants, which Plaintiff claimed was the cause of her ailments, were thought to be a cause of connective tissue disorder, that had been found to be false. (AR 330, 334). Dr. Nafoosi stated that the only severe impairment supported by the medical record was depression. (AR 335).

On June 14, 2004, Plaintiff formally moved to amend the applications to request a closed period of disability beginning June 12, 1994 through November 30, 2003, when Plaintiff apparently resumed working. (AR at 523). On March 7, 2005, the ALJ issued an unfavorable decision. (AR at 282-97). The ALJ found that Plaintiff suffers from fibromyalgia, which is severe within the meaning of the regulations, but which did not prevent her from performing a range of work at the light exertional level. (AR 296). In doing so, the ALJ found that Plaintiff's testimony was not entirely credible. The ALJ concluded that Plaintiff was not disabled at any time during the relevant time period. (AR 296-97). The Appeals Council denied review and Plaintiff commenced the current action for judicial review.

In accordance with the Court's Case Management Order, the parties have filed a joint stipulation ("JS") of disputed issues. Plaintiff contends that the ALJ erred by: (1) failing to properly

3

consider all of the medical evidence; (2) failing to properly consider Plaintiff's testimony and her subjective complaints; and (3) relying upon vocational expert testimony which was in response to incomplete interrogatories. (JS at 4). The Commissioner disagrees.

After reviewing the parties' respective contentions and the record as a whole, the Court finds Plaintiff's contentions to be without merit and affirms the Commissioner's decision.

## II.  Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

\\
\\

**III.  Discussion and Analysis**

    **A.  The ALJ Properly Considered All of the Medical Evidence**

Plaintiff contends that the ALJ failed to consider the opinions of her treating and consultative physicians. Plaintiff specifically points to the opinions of Steven A. Moskowitz, M.D., and Gabriel Fabella, M.D., as supporting a finding of disability. (JS at 5). The Court finds that the ALJ properly considered the opinions of both doctors. Plaintiff's claim is therefore without merit.

If the opinion of a treating or examining physician is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Id.* Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff claims that Dr. Moskowitz is one of her treating physicians and that the ALJ is thus required to provide "clear and convincing reasons" for rejecting his opinion rather than "specific and legitimate reasons." (JS at 5-6). In his report from October 1994, Dr. Moskowitz states that Plaintiff's "functional category is B since she is unable to work more than 20 hours weekly due to weakness and fatigue. Her functional category is based on the patient's history and physical examination findings noted by me above." (AR at 470).

\\

The ALJ provided reasons both "clear and convincing" and "specific and legitimate" for rejecting Dr. Moskowitz's opinion. In considering the medical reports from Dr. Moskowitz, the ALJ stated that upon physical examination, the results were mostly unremarkable. (AR at 288). There was no continuity in the doctor's interaction with Plaintiff; he examined Plaintiff twice. The first examination occurred on November 1, 1994, in anticipation of litigation in a class action lawsuit regarding silicone breast implants,[1] and the second on October 15, 1998. (AR at 466-70, 199-200). Given the insubstantiality of Dr. Moskowitz's opinions about Plaintiff's limitations, the ALJ provided clear and convincing as well as specific and legitimate reasons for rejecting them.

The ALJ also considered the 1995 evaluation of Dr. Fabella, who noted that Plaintiff "has the atypical connective tissue disease secondary to silicone breast ruptures" and that "myalgias, arthralgias and soft tissue tenderness are part of the syndrome." (AR at 475). Dr. Fabella concluded that he did not believe that Plaintiff could return to her *prior work* as it was described to him on August 11, 1995. (Emphasis added)  (AR at 475). The ALJ found that Plaintiff was unable to perform any of her past relevant work as opined in Dr. Fabella's report. The ALJ found, however, that there was other work that she could perform at a lighter exertional level. Thus, the ALJ properly considered both doctors' opinions.

---

[1] The ALJ's focus on the purpose for which treatment was obtained is irrelevant and improper. *Lester v. Charter*, 81 F.3d 821, 834 (9th Cir. 1995) (holding that the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them). However, the absence of acute distress and the lack of continuity of treatment are sufficient reasons for rejecting the opinion of Dr. Moskowitz.

6

**B.  The ALJ Did Not Err in His Assessment of Plaintiff's Subjective Complaints and Credibility**

Plaintiff contends that the ALJ erred by failing to properly assess her complaints of fatigue during the closed period of disability as well as her credibility. (JS at 8). In addition, she contends that the ALJ erroneously relied upon a psychological consultative examination report dated November 23, 2004, approximately one year after the closed period of disability. The Court finds that the ALJ properly evaluated Plaintiff's complaints of fatigue as well as her credibility.

At the administrative hearings, Plaintiff testified that she did not think that she could sustain any kind of activity for more than 4 hours, and that she would likely be able to work for only 2 to 3 hours before she would need a 20 minute break, because of fatigue. (AR at 81-84, 317-19). It appears from the record that Plaintiff's health problems began when her silicone breast implants began to leak in 1993. (AR at 215). Blood tests taken in February 1994 showed an extremely elevated silicone antibody level. (AR at 188). Plaintiff's leaky silicone implants were removed and replaced with saline implants in April 1995. (AR at 191-94). The medical evidence in the record reflects that Plaintiff sought treatment from several doctors beginning in 1994, often complaining of fatigue, weakness, poor concentration, pain, coldness in her hands and feet.[2] (AR at 199, 235, 238, 245). Plaintiff was diagnosed with, among other things,

---

[2] Those doctors included Dr. Steven Moskowitz, who examined Plaintiff in October of 1994 and in October of 1998; Dr. Panahi, who examined Plaintiff in May 1994; Dr. Afrasiabi who also examined Plaintiff in May 1994, and Dr. Mehta who examined Plaintiff in January 1999.

7

atypical connective tissue disorder and fibromyalgia.[3]  (AR at 200, 216, 240).

In order to establish disability, Plaintiff was required produce objective medical evidence of an underlying impairment which can reasonably be expected to produce the symptoms alleged, which in this case included fatigue.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant has produced such evidence, the Commissioner may not reject the claimant's subjective complaints based solely on a lack of fully corroborative objective medical evidence.  *Id*.  Unless there is evidence that a claimant is malingering, the ALJ may only reject the claimant's testimony regarding the severity of her symptoms by making "specific findings stating clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Under this standard, it is not sufficient for the ALJ to make general findings about the claimant's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Rather, the ALJ must identify which testimony is not credible and the specific evidence that suggests that the testimony is not credible.  *Id*.; *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, Plaintiff has satisfied her burden of presenting objective medical evidence that she suffers from an underlying impairment, fibromyalgia, which can reasonably be expected to produce some degree of fatigue.  Fatigue has been medically recognized as a symptom of

---

[3] Dr. Mehta observed multiple trigger points suggesting fibromyalgia, in her upper, mid, and lower back, over the trochanters, medial elbows and medial knees.  (AR at 216).

fibromyalgia. *See*, *Merck Manual of Diagnosis and Therapy,* (Sec. 5, Musculoskeletal and Connective Tissue Disorders, Chapter 59 *Nonarticular Rheumatism). See also Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004); *Rollins*, 261 F.3d at 855; *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996). In addition, Medical Expert Dr. Landau testified that the objective medical evidence established that Plaintiff suffered from fibromyalgia and that fibromyalgia could reasonably be expected to produce chronic fatigue. (AR at 60). Because there was no evidence that Plaintiff was malingering,[4] the ALJ was required to identify specific, clear, and convincing reasons for discrediting Plaintiff's testimony concerning fatigue.

In his decision, the ALJ listed a number of specific, clear, and convincing reasons why Plaintiff was not credible. He noted that Plaintiff did not seek any medical treatment from 1995 to 1998, despite her financial ability to seek treatment.[5] Although Plaintiff stated that she had chronic fatigue syndrome by history, her medical records do not document any of the most common physical signs of the disease. Moreover, Plaintiff's "allegations of neurological deficits in the form of loss of memory and concentration are not supported by the medical records." (AR at 293).

\\

---

[4] While Dr. Malancharuvil, the medical expert, testified that the results of Plaintiff's first Minnesota Multiphasic Personality Inventory ("MMPI") showed deliberate malingering, the test was considered invalid. (AR at 20, 99-100). The results of the second MMPI showed that Plaintiff exaggerated some of her physical symptoms, but did not show malingering. (AR at 20, 100).

[5] Plaintiff testified that her spouse earned between $170,000 and $250,000 a year in those years. (AR at 329). She also received a settlement of $40,000 dollars in 1996 and an additional $12,000 for medical bills. (AR at 331).

9

During three emergency room visits in 2000 and 2001, Plaintiff "asserted that she was healthy and denied any past or current fever, chills, fatigue, malaise or general weakness; and she denied any heat or cold intolerance, lethargy, nervousness or hyperactivity, depression, anxiety or suicidal ideation." (AR at 293). This undermines Plaintiff's claims of fatigue during the relevant time period. The ALJ also noted that although Plaintiff testified on September 4, 2003 that her condition was gradually worsening, she completed a real estate sales training course by the end of 2003, became licensed thereafter and apparently returned to work. (AR at 293-94).

The medical records also indicate that Plaintiff refused pain medication and anti-depressants. Although she testified that she takes medication that she buys in Mexico, there is no evidence that this is the prescribed treatment of a healthcare professional. Plaintiff's "daily activities, which admittedly include ½ mile walks every-other day, stretching exercises, light house work, caring for puppies/dogs, some yard work, driving a car, shopping, going to the movies, dining out, preparing for a new career in real estate, visiting with family and friends, and driving regularly with her daughter to Mexico are inconsistent with a diagnoses of disabling fatigue or depression." (AR at 294). The ALJ identified specific, clear, and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints of fatigue and her credibility.

\\
\\
\\

### C. **The ALJ Properly Considered All of the Vocational Expert's Testimony**

The ALJ presented two hypothetical questions to the vocational expert in the form of interrogatories, asking her to consider an individual with Plaintiff's age, education and work experience, and the abilities to do the following:

> (1) No lifting or carrying more than twenty pounds occasionally, ten pounds frequently. Pushing/pulling limitations consistent with lifting and carrying limitations. This person can stand and/or walk for six hours out of an eight-hour day and sit for six hours out of an eight-hour day. This person can occasionally climb stars and ramps, balance, bend or stoop, kneel, crouch, crawl, and bilaterally reach in all directions. As a result of fatigue, person should not work around dangerous or fast moving machinery, work at fast-paced work or with occupations that require safety operations or hypervigilence.
>
> (2) Same as the first hypothetical, *except* lifting and carrying is reduced to ten pounds occasionally and less than ten pounds frequently and standing and walking are reduced to two hours in an eight hour day.

(AR at 456-57).

The vocational expert testified that under neither hypothetical would an individual be able to perform Plaintiff's past relevant work. (AR at 457). However, the vocational expert testified that such a person could do other jobs available in the regional and national economies and listed three occupations for each hypothetical

11

1  individual, including sales clerk, sales person, and cosmetics and
2  toiletries information clerk. (AR 457). Based upon this testimony,
3  the ALJ concluded that there are a significant number of jobs which
4  Plaintiff could perform. (AR at 295).
5  Plaintiff asserts that the ALJ's finding is erroneous in that
6  it relies on the vocational expert's responses to incomplete
7  interrogatories. (JS at 11). Plaintiff complains that the
8  hypothetical questions presented to the vocational expert "were
9  incomplete in that they failed to consider Plaintiff's fatigue and
10 her need for extra unscheduled breaks due to her pain and fatigue."
11 *Id.* According to Plaintiff, the hypothetical questions "failed to
12 contemplate that the Plaintiff was incapable of sustaining a normal
13 8 hour per day and 40 hour per week work schedule, as specified by
14 not only her treating physician (AR 470), but also the consulting
15 physician (AR 475). *Id.*
16 However, as discussed above, the ALJ properly discounted
17 Plaintiff's subjective complaints and credibility. As such, the
18 hypothetical that the ALJ offered to the vocational expert was not
19 incomplete. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 756-57
20 (9th Cir. 1989) (hypothetical questions posed to a vocational expert
21 need not include all alleged limitations, but rather only those
22 limitations the ALJ finds to exist); *Martinez v. Heckler*, 807 F.2d
23 771, 773-74 (9th Cir. 1986). Accordingly, the ALJ properly relied
24 on the vocational expert's responses to complete interrogatories.
25 \\
26 \\
27 \\
28 \\

**D.   Conclusion**

Based upon the applicable legal standards, the Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

**ORDER**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

DATED: March 2, 2006                    */s/ Marc L. Goldman*

_____
MARC L. GOLDMAN
United States Magistrate Judge